UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SEAN M., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:25-cv-00314-JCN |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S COMPLAINT**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability period beginning on December 31, 2017. Defendant, the Social Security Administration (SSA) Commissioner, found Plaintiff had multiple severe impairments but determined that Plaintiff had sufficient functional capacity to perform light work. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, the Court affirms the administrative decision.

## THE ADMINISTRATIVE FINDINGS

Defendant's final decision is the May 8, 2024, decision of the Administrative Law Judge (ALJ).[1]  (Admin. Record ("R.") at 14-38.)  The ALJ's decision tracks the five-step sequential evaluation process for analyzing social security disability claims set forth in 20 C.F.R. § 404.1520(a).

The ALJ found that from his alleged disability onset date through his date last insured (March 31, 2021), Plaintiff had the following severe impairments: bacterial endocarditis, septic arthritis and osteomyelitis of the right shoulder, lumbar disc disease (status post-surgery), chronic obstructive pulmonary disease (COPD), depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD).  (R. 19.)  After assessing the evidence, including Plaintiff's hearing testimony and various medical records and opinions, the ALJ determined that Plaintiff's impairments did not meet one of the Listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 21-25.)  The ALJ further determined that Plaintiff had the residual functional capacity (RFC) to perform light work with certain limitations.  (R. 25-31.)[2]  The ALJ concluded that Plaintiff can understand and remember simple instructions and perform simple tasks but cannot work with the public.  (R. 25.)  Finally, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform,

---

[1] Because the Appeals Council found no reason to review the decision (R. 1.), Defendant's final decision is the ALJ's decision.

[2] A claimant's RFC is the most that the claimant is still able to do in a work environment despite the claimant's limitations.  20 C.F.R. § 404.1545(a)(1).

including the representative jobs of marker, office helper, and electrical accessories assembler.  (R. 32-33.)

### STANDARD OF REVIEW

The Court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### DISCUSSION

Plaintiff contends that the ALJ erred in evaluating the medical expert opinion evidence that addressed Plaintiff's impairments and RFC and when assessing other evidence regarding Plaintiff's symptoms and limitations in connection with Plaintiff's RFC determination.  In his reply brief, Plaintiff also raises two additional arguments.  First, he cites a perceived inconsistency between the medical expert opinion evidence regarding Plaintiff's drug use during the relevant period and the ALJ's findings regarding Plaintiff's drug use during the relevant period. Second, Plaintiff points out that during the administrative hearing, the ALJ represented that she would schedule Plaintiff for

3

consultative examinations—a representation that he deems an acknowledgement that the medical opinion evidence did not adequately address his RFC—but the ALJ nevertheless issued a decision without the examinations.

In her assessment of Plaintiff's condition and his functional capacity, the ALJ primarily relied on the expert opinions of four state agency consultants—Brian Stahl, Ph.D., Mary Alyce Burkhart, Ph.D., Benjamin Weinberg, M.D., and Archibald Green, D.O. (R. 30.) Plaintiff contends that the ALJ failed to explain how she considered supportability and consistency in her assessment of the medical opinions as required by 20 C.F.R. § 404.1520c(b)(2). He also argues that the ALJ failed to explain how the evidence supported her assessment of Plaintiff's RFC and how she resolved material inconsistences or ambiguities in the evidence as required by Social Security Ruling (SSR) 96-8p, 1996 WL 374184.

The ALJ included in her decision an extensive account of the medical record, including the expert opinions. As to the opinions of Drs. Stahl and Burkhart regarding Plaintiff's mental or cognitive limitations, the ALJ observed that both experts agreed that Plaintiff has moderate limitations in all areas of functioning, and explained:

> These opinions are consistent with each other and persuasive. They are supported by the medical evidence . . . including some documentation of anxiety, depression, and ADHD symptoms with variable mood, isolative behaviors with some guarding, [and] reports of difficulty remembering and concentrating (see Exhibit 2F, hearing testimony). A greater degree of limitation is not supported considering largely normal mental status exam findings.

(R. 30.)

4

As to the opinions of Drs. Weinberg and Green regarding Plaintiff's physical limitations, the ALJ found:

> These opinions are consistent with each other and persuasive. From January 2018 through February 2021, physical exam findings were overall normal. Claimant had some exacerbations of his COPD, but they were conservatively treated with inhalers, steroids, and nebulizer in [the] emergency department. He had some transient issues but none that lasted 12 months or more or that caused acute symptoms that affected his functioning until he was hospitalized in March 2021 for various infections and underwent cervical laminectomy, lumbar incision and drainage, and treatment for right shoulder sepsis, as well as endocarditis. As such, the limitation to light work is supported with reaching limitations for the right upper extremity, occasional postural limitations due to neck and back issues, and environmental limitations limiting exposure to hazards and respiratory irritants (see Exhibit 2F).

(R. 30-31.)

Contrary to Plaintiff's contention, the ALJ's discussion of the experts' opinions—along with her detailed description of the medical records, which included the results of many examinations and tests during the relevant time period—satisfied her obligation to "explain how [she] considered the supportability and consistency factors for a medical source's opinions or prior administrative medical findings" as required by 20 C.F.R. § 404.1520c(b)(2). *See id.* § 404.1520c(c)(1) (defining supportability); *id.* § 404.1520c(c)(2) (defining consistency). The ALJ adequately explained how the evidence, including Plaintiff's testimony and his function reports, supported her assessment of Plaintiff's RFC.

In addition, as required by SSR 96-8p, the ALJ's narrative discussion explained how she considered and resolved material inconsistencies in the record: the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but found that Plaintiff's statements about the intensity, persistence,

and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record, including records documenting Plaintiff's medical and psychiatric treatment from January 2017 through the end of 2021, and Plaintiff's reported activities of daily living.

The ALJ also did not err in her assessment of Plaintiff's testimony and statements regarding his symptoms and limitations. Under SSR 16-3p, the ALJ was required to engage in a two-step assessment of Plaintiff's symptoms: first, determine whether there were medically determinable impairments that could reasonably be expected to result in Plaintiff's symptoms, and then evaluate whether the intensity, persistence, and limitations caused by the symptoms limited Plaintiff's ability to perform work-related activities. *See* 2017 WL 5180304, at *3. An ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged[,]" and may not evaluate alleged symptoms "based solely on objective medical evidence unless that . . . evidence supports a finding that the individual is disabled." *Id.* at *5.

In this case, the ALJ appropriately followed the guidance set forth in SSR 16-3p: she considered the objective medical evidence and other evidence in the record, including Plaintiff's function reports, in evaluating Plaintiff's symptoms, and did not disregard Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms based solely on the medical evidence in the record. The ALJ's assessment of Plaintiff's ability to perform light work—with physical restrictions—and to perform simple tasks in

a nonpublic setting accounted for Plaintiff's testimony and statements regarding the limiting effects of his physical symptoms, and his limitations in interacting with others and following instructions.

Further, in connection with her determination that certain evidence was not entirely consistent with Plaintiff's allegations concerning the limiting effects of his symptoms, the ALJ cited (a) medical evidence showing normal imaging, primarily normal mental status exams, and treatment for physical and psychiatric issues from 2017 through 2021 and (b) Plaintiff's reported activities of daily living in 2022 and 2023. *See* 20 C.F.R. § 404.1529(c) (explaining that objective medical evidence should be considered in evaluating the intensity, persistence, and limiting effect of alleged symptoms along with other factors, including claimant's daily activities); *see also Rebecca L. v. Dudek*, No. 2:24-cv-00217-KFW, 2025 WL 1029826, at *5 (D. Me. Apr. 7, 2025) ("[T]he ALJ was entitled to consider the Plaintiff's activities of daily living and did not rely on them exclusively."). Although there was contrary evidence in the record, the ALJ's findings regarding Plaintiff's RFC were supported by evidence that a reasonable mind might view as adequate to support those findings. *See Jimmy D. v. Dudek*, No. 1:24-cv-00331-KFW, 2025 WL 1135604, at *4 (D. Me. Apr. 17, 2025) ("That the Plaintiff would have liked the ALJ to place more weight on his subjective symptom testimony and reports, or can point to evidence that might support a different conclusion, is not cause for remand.").

The additional arguments Plaintiff raises in his reply brief also do not warrant remand. Although there is some medical evidence in the record that might contradict the ALJ's finding that Plaintiff's drug use during the relevant period was non-severe and

7

immaterial, there is other evidence in the record that the ALJ identified that reasonably supports her finding.  It is not the Court's role to reweigh the conflicting evidence in the record, *Colon v. Sec'y of HHS*, 877 F.2d 148, 153 (1st Cir. 1989), and even if the Court could, Plaintiff has not persuasively argued that a reassessment of the evidence would produce a different result.

Finally, with respect to the issue of the consultative exams, the record reveals the following:  During the administrative hearing, Plaintiff's counsel stated that Plaintiff intended to pursue an application for Supplemental Security Income under Title XVI of the Social Security Act.  (R. 43.)  The ALJ observed that it "might make sense" to schedule Plaintiff for some consultative exams that "would give at least current insight into the Title XVI."  (R. 46.)  Counsel acknowledged that consultative exams in 2024 would "probably [be] a bit late to some extent" to provide much insight as to the Title II application for a period of alleged disability that concluded in 2021, but represented that Plaintiff would be "fine with attending exams."  (*Id.*)  The ALJ stated that she would not make a decision until Plaintiff completed his application for benefits under Title XVI and completed his exams so that the claims could be consolidated, and she encouraged Plaintiff to "give full effort" in the context of those exams.  (R. 78-79.)  Ultimately, the exams did not occur and there were no claims to consolidate:  Plaintiff evidently did not appear for his scheduled appointment to complete his Title XVI application, and when SSA was unable to reach him to schedule a new appointment, SSA made an informal decision that he was not eligible for SSI.  (R. 170.)  Under the circumstances, the ALJ did not commit reversible error in

issuing her decision without first scheduling the exams that were expected to provide insight into the application that Plaintiff did not complete.

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of June, 2026.

9